IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2011 SEP 27 A 11: 51

CLERK'S OFFICE
AT BALTIMORE

BY____DEPUTY

| | | |
|---|---|---|
| EUGENE GARDNER #348-977 | * | |
| Plaintiff | * | |
| v | * | Civil Action Case No. RDB-11-1875 |
| WARDEN | * | |
| Defendant | * | |

***

## MEMORANDUM OPINION

The court construed Eugene Gardner's (Gardner) claim of imminent harm as a request for emergency injunctive relief and ordered counsel to file a show cause response. The Maryland Attorney General has responded. ECF No. 3. Gardner has filed a reply. ECF No. 4. For the following reasons, the court finds that emergency injunctive relief is unwarranted and the motion will be denied. Gardner will be granted twenty-eight days to inform this Court whether he wants to supplement and continue to pursue his claim or withdraw this case from further consideration.

## BACKGROUND

### 1. Procedural

Western Correctional Institution (WCI) inmate Eugene Gardner (Gardner) submitted correspondence to this Court, claiming corrections officials have failed to protect his safety. Plaintiff's Letter, ECF Document 1. The Court directed the Office of the Attorney General to file an emergency show cause a response addressing the claim of failure to protect. ECF No. 2.

### 2. Failure to Protect Claim

Gardner asks this Court for an order placing him on protective custody at WCI because a prison gang, the Bloods, allegedly have an "all out hit" on his life. Plaintiff's Letter, ECF Document 1. Gardner states that a cell mate named Clarence Allen tried to extort him and that unnamed WCI correctional officers informed him that it wasn't their problem that Clarence Allen

was beating him. *Id.* Gardner acknowledged that, "out of fear for his life," he cut Clarence Allen on his face with a razor. *Id.* Gardner claims that he has received "several death threats, " although he does not identify the persons who threatened him. *Id.*

### 3. Factual Background

Gardner was classified as medium security and transferred to WCI on March 6, 2008. Def. Ex. 1, p1, Declaration of James Bennett, Correctional Case Management Specialist II. He was assigned to general population. On February 22, 2011, he accosted an officer and approached the officer in a threatening manner with closed fists while he and the officer were standing in a group of 25 to 30 inmates. Def. Ex. 1, p. 3, "Notice of Inmate Rule Violation and Disciplinary Hearing 2/22/11." Gardener was found guilty after a hearing of Rule Violations 100, 101 and 312 ("Being involved in any manner with a disruptive activity," "Assault or battery on staff," and "Interfering with or resisting the duties of staff"), Def. Ex. 1, supra; Ex. 2 Declaration of Renee Emerick, Litigation Coordinator, p. 3, Category I-V Violations; Ex. 3, DCD #105-5, pages 2-3. As a result, he was assigned to 75 days of disciplinary administrative segregation Def. Ex.1, p. 4.

On March 19, 2011, correctional officers were escorting Gardner's cell mate Clarence Allen from his cell toward the shower area. Gardner repeatedly struck Allen, who was handcuffed. Def. Ex. 1, p. 5, "Notice of Inmate Rule Violation and Disciplinary Hearing 3/19/11." After Gardner refused to obey orders to stop hitting Allen, Officer Niland sprayed Gardner with pepper spray. *Id.* After a hearing, Gardner was found guilty of Rule Violations 102 and 104 ("Assault or battery on an inmate," and "Disobeying a direct lawful order"), Def. Exhibit 1, *supra*; Ex. 2, Declaration of Renee Emerick, p. 3, Category I-V Violations; Ex. 3, DCD #105-5, p. 2, and assigned to 150 days of disciplinary administrative segregation. Def. Ex. 1, p.6.

Clarence Allen was added as a documented enemy to Gardner's prison file. Gardner and Allen will not be housed at the same facility in general population. Def. Ex. 1, p. 1, Declaration of James Bennett and p. 7, "OBSCIS Offender Function Maintain Enemies List." The WCI Intelligence Department has no documented evidence to indicate a threat to Gardner's safety from gangs at WCI. Although Gardner does not meet the criteria for protective custody at this time, his housing assignment will be reviewed when his disciplinary segregation sentence ends. Def. Ex. 1, p. 1, Declaration of James M. Bennett.

According to Gardner, although Allen was transferred from WCI, Allen is a known member of the Bloods prison gang and gave Gardner's name to other inmates. Inmate Phillip King told Gardner that he is a "dead man walking." Plaintiff's Reply, p. 2. For this reason, and because Gardner's disciplinary segregation sentences have run, the court will direct counsel to provide a status report within fourteen days indicating Gardner's present housing situation.

## STANDARD OF REVIEW

A preliminary injunction is an extraordinary and drastic remedy. See *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). To obtain a preliminary injunction, a movant must demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest. See *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, _U.S._, 130 S.Ct. 2371, 176 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam).

Gardner fails to establish that he is likely to suffer irreparable harm without emergency injunctive relief. Gardner does not provide the names of the individuals who allegedly threatened

3

him. Further, corrections officials state that when Gardner's disciplinary sentence is finished, they will consider his concerns in making his housing assignment. Under the circumstances presented here, Gardner has not shown the likelihood of irreparable injury in the absence of injunctive relief and there are insufficient grounds to order him immediately placed in protective custody.

## CONCLUSION

Gardner fails to demonstrate that he is likely to suffer irreparable harm without emergency injunctive relief. Accordingly, the extraordinary and drastic remedy provided by a preliminary injunction is unwarranted and shall be denied. Counsel will be directed, however, to file a status report within fourteen days indicating Gardner's present housing status.

Gardner will be granted twenty-eight days to inform this Court whether he wants to supplement and continue consideration of his claims or withdraw this case from further consideration. If he intends to continue his case, Gardner must complete a prisoner civil rights complaint form and submit the $350.00 filing fee or file a Motion to Proceed in Forma Pauperis. The Clerk will send him a prisoner civil rights information and forms packet in the event he intends to proceed. Failure to timely comply will result in denial and dismissal of this case without prejudice. A separate Order follows.

September 26, 2011
Date

_____
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE

4